GEOFFREY A. HANSEN
Acting Federal Public Defender
GABRIELA BISCHOF
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:	415.436.7700
Facsimile:	415.436.7706
Email:		Gabriela_Bischof@fd.org

Attorney for Defendant
BRYANT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANDRE BRYANT,<br><br>Defendant. | Case No.  3:21-MJ-70247 MAG<br><br>OPPOSITION TO GOVERNMENT'S MOTION TO REVOKE THE RELEASE ORDER |

**INTRODUCTION**

The government's motion to revoke the release order rehashes the same arguments it made to Pretrial Services, and to Judge Kim in both a written briefing and in argument at the second detention hearing. They have offered the Court no reason to overturn the considered recommendation of Pretrial Services and subsequent order of the magistrate. Mr. Bryant is a man obviously in need of drug treatment, with a record that reflects criminal conduct motivated by drug addiction – eight of his twelve prior felony convictions are drug convictions and the remainder are consistent with the lifestyle of an addict – a 2002 false personation conviction, and possession of a stolen vehicle and taking a vehicle without the owner's consent in 2016 and

2017.[1] Mr. Bryant has never received the kind of months-long inpatient drug treatment he would receive through Center Point, and his only drug treatment has been 2 or 3 weeks in Salvation Army in 2010 and outpatient treatment in 2012, nearly a decade ago. Moreover, although only one signed the bond, Mr. Bryant has three willing sureties – women who know him well, believe he is serious in his desire for treatment, and are accordingly willing to stake $50,000 on his willingness and ability to comply with court orders if given the necessary treatment. The defense does not contest that Mr. Bryant's prior record is significant, but as Judge Kim and Pretrial Services both determined, co-signed release to inpatient drug treatment would mitigate the risks he may pose.

## APPLICABLE LAW

18 U.S.C. § 3142 governs pretrial detention of criminal defendants. Under the procedures set forth in the statute, criminal defendants are ordinarily entitled to go free before trial. *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). In "rare circumstances," however, a court may order a defendant detained pending trial. *Id.* These circumstances are limited to those in which a judge finds that "no condition or combination of conditions" will (1) "reasonably assure" the appearance of the person at trial, and (2) "reasonably assure" the safety of the community. 18 U.S.C. § 3142(e).

Mr. Bryant has not been convicted of the charges pending in the complaint. Because he is charged with a Controlled Substance Act offense identified at 18 U.S.C. § 3142(e)(3)(A), he is subject to a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." That presumption does not shift the burden of proof, however, only the burden of production. So long as Mr. Bryant "come[s] forward with some quantum of evidence contrary to the fact presumed by statute… [he] has met his obligation." *United States v. Hurtado*, 779 F.2d 1467, 1470 (11th Cir. 1985) (emphasis added) (citing *United States v. Jessup*, 757 F.2d 378, 381 (1st

---

[1] One felony is listed in his RAP and in the Prebail Report as "unspecified."

Cir. 1985) (abrogated on different grounds). "The ultimate burden of persuading the trial judge or the magistrate still rests with the government. Thus when the government's showing is not clearcut the presumption is that the defendant should not be detained." *Ibid*. The government must prove a serious risk of flight by the preponderance of the evidence. *United States v. Motamedi*, 767 F.2d at 1406. The government must prove that Mr. Bryant presents a risk of danger to the community or any one person by clear and convincing evidence. *Motamedi* at 1406; *and see* 18 U.S.C. sec. 3142(f).

## ARGUMENT

### 1. **Risk of Danger**

The government cannot meet its burden to show by clear and convincing evidence that Mr. Bryant presents a risk of danger to the community that no condition or combination of conditions can mitigate. Mr. Bryant's criminal conduct is clearly motivated by his drug addiction; accordingly, inpatient drug treatment is a condition that can mitigate any danger he poses. The volume of drug convictions alone is notable, but the other convictions also bear the hallmarks of addiction: a 2002 false personation conviction, and possession of a stolen vehicle and taking a vehicle without the owner's consent in 2016 and 2017. Moreover, in each police report the government submitted to the Court, Mr. Bryant is found with some form of drug paraphernalia meant for personal ingestion. His criminal conduct and drug addiction are inextricably intertwined.

The government argues that the Court should find that Mr. Bryant is a habitual possessor of firearms and maker of criminal threats based on his arrest history, and therefore find that he presents a "severe danger to the community." See Gov't Motion at 9-10. But the Court should not give any significant weight to unconvicted conduct, especially where, as here, the government has presented no factual evidence that would allow the court to conclude what, if any, conduct actually occurred.  The Ninth Circuit has held that the weight of the evidence is the least important factor because a court cannot make a pretrial determination of guilt. *Motamedi*, 767 F.2d at 1408. *See* 18 U.S.C. § 3142(g)(2) (weight of the evidence). By this logic, it clearly

follows that the Court should not afford undue weight to unproven allegations or unconvicted conduct. Much of the government's argument about firearms possession or history of violence rests on the fact of an arrest, as reflected in a RAP sheet, without any information for the Court about what allegedly occurred and why the charge was not pursued. These types of allegations are deserving of no weight. But even where the government has provided the Court with an initial police report, such documentation is unworthy of significant weight. A police report is the starting point of an investigation, not a document conveying immutable truths. Greater context, such as the uncovering of witness lies, misunderstandings, or limitations, and necessary follow-up investigation such as the recovery of surveillance video or DNA testing, all contribute to the dismissal of charges where an initial police report made a conviction seem like a foregone conclusion. The government has failed to show that Mr. Bryant presents any danger beyond the danger inherent in the sale of dangerous drugs and in drug abuse itself. Such risk can be mitigated by residential drug treatment.

**2. Risk of Flight**

The government cannot meet its burden to show by a preponderance of the evidence that Mr. Bryant presents a serious risk of flight that no condition or combination of conditions can mitigate. Mr. Bryant is a lifelong resident of the Bay Area. He has four children who live in the Bay Area, and his sister and his significant other both reside in the Bay Area. He has no mental health conditions to complicate his ability to appear in court. Residential drug treatment and a cosigner on his bond are conditions that will reasonably assure the Court of his appearance.

On July 7, 2020, Mr. Bryant had no outstanding warrants.[2] Contrary to the government's argument, there is no indication in Mr. Bryant's RAP sheet, the Prebail Report, or in undersigned counsel's review of publicly available Solano County court records that any warrant for him existed. There was, however, a misdemeanor no bail bench warrant for a man named Sinque Washington, in case number VCR233596. Although Mr. Bryant had used Mr. Washington's

---

[2] Mr. Bryant makes the following proffers based on discovery provided by the government, including officer body-worn camera, and defense counsel's review of publicly available Solano County court records.

name when he was very young, that mistake boomeranged onto him ten-fold, as Mr. Washington later had significant contact with the justice system and the two have been consistently misidentified. Although no warrant for Mr. Bryant's arrest existed, and Mr. Bryant provided the officers with his true and correct identification, the officers had detained and searched Mr. Bryant before the existence of a warrant could even be confirmed by dispatch. These facts are relevant for two reasons. First, Mr. Bryant had not incurred a bench warrant and such conduct should not be attributed to him in evaluating risk of flight, nor should the Court infer that he lied to the officers about the warrant in order to avoid arrest.  Second, the government's argument that Mr. Bryant knows of his exposure in this case and it makes him more likely to flee is premature; neither the government nor the defense know at this early juncture how this case will turn out, nor does Mr. Bryant.

The government argues that Mr. Bryant has five prior bench warrants for failures to appear over the last twenty years. Mr. Bryant had a bench warrant in January 2021, but that is the only warrant undersigned counsel could verify. As set forth above, the government is mistaken about at least one of those bench warrants (the July 2020 incident), and undersigned counsel can find no reference to three of the remaining four in the Prebail Report or Mr. Bryant's RAP sheet, nor are the remainder identified in any detail. Five failures to appear over 20 years is not a record of nonappearance that no condition could mitigate, and a single failure to appear is even less so.

A defendant need not show that release conditions will be the equivalent of jail; only that there exist conditions that will reasonably assure the defendant's presence. See e.g. *Kin-Hong v. United States*, 926 F. Supp. 1180 (D. Mass. 1996), reversed on other grounds in *United States v. Kin-Hong*, 83 F.3d 523, 524 (1st Cir. 1996). Here, inpatient drug treatment will interrupt a cycle of addict thinking, provide structure and accountability, and most importantly, support sobriety. This condition provides valuable assurance to the Court, especially because Mr. Bryant has not received any treatment in the last nine years. Moreover, this is Mr. Bryant's first federal case. If Mr. Bryant missed a court date in the past, Mr. Bryant alone faced the consequence of that behavior. Here, Ms. Williams would lose $50,000 if Mr. Bryant were to act carelessly. As set forth below, she is an appropriate surety and Mr. Bryant's desire to keep her from harm is a

condition that will reasonably assure his presence.

**3. Cosigners**

Mr. Bryant has three people close to him willing to stake $50,000 on the earnestness of his desire for recovery: his mother, his longtime friend and ex-fiancée, and his significant other. The first two women were found to be unsuitable cosigners because they had criminal history. Even if the Court agrees that their criminal history renders them unsuitable sureties, it is certainly meaningful that so many people were willing to risk their financial futures on Mr. Bryant's ability to follow through on his promises to the Court.

However, there is no provision of the bail statute that requires proposed co-signers to be angels or millionaires. Moreover, as a practical matter, where a co-signer is not intended to be a custodian, their personal habits or criminal history is of significantly less importance. What matters is their relationship with the defendant, the defendant's relationship with them, and the ability of the court to impose a meaningful and significant penalty against the co-signer. These are the factors that demonstrate whether they will be able to influence the defendant's conduct. Accordingly, both his mother and his friend would be suitable cosigners.

The cosigner accepted by Judge Kim is Melissa Williams. The government argues that Ms. Williams has only one month of employment and has a criminal history, rendering her an unsuitable cosigner. Gov't Motion at 12. These arguments are so reductive as to be misleading. According to Pretrial Services, Ms. Williams has 11-year-old misdemeanor convictions for driving without a license and giving false registration to an officer, and was never taken into custody or charged with any other offense. The government similarly misstates her financial viability. As confirmed by a Pretrial Services interview, Ms. Williams reported that for the last two years, she was employed as a services coordinator with Bay Area Moisture Control in Novato, California, but the business closed down due to the pandemic. As a result, she received unemployment benefits for two months, totaling $3000 per month. Rather than simply rest and collect unemployment, she began working with a temp agency and obtained employment quickly. Now, she is on a monthlong assignment performing customer service for an eyeglass

6

BRYANT / Opp. to Gov't Motion to Revoke Release Order

condition that will reasonably assure his presence.

**3. Cosigners**

Mr. Bryant has three people close to him willing to stake $50,000 on the earnestness of his desire for recovery: his mother, his longtime friend and ex-fiancée, and his significant other. The first two women were found to be unsuitable cosigners because they had criminal history. Even if the Court agrees that their criminal history renders them unsuitable sureties, it is certainly meaningful that so many people were willing to risk their financial futures on Mr. Bryant's ability to follow through on his promises to the Court.

However, there is no provision of the bail statute that requires proposed co-signers to be angels or millionaires. Moreover, as a practical matter, where a co-signer is not intended to be a custodian, their personal habits or criminal history is of significantly less importance. What matters is their relationship with the defendant, the defendant's relationship with them, and the ability of the court to impose a meaningful and significant penalty against the co-signer. These are the factors that demonstrate whether they will be able to influence the defendant's conduct. Accordingly, both his mother and his friend would be suitable cosigners.

The cosigner accepted by Judge Kim is Melissa Williams. The government argues that Ms. Williams has only one month of employment and has a criminal history, rendering her an unsuitable cosigner. Gov't Motion at 12. These arguments are so reductive as to be misleading. According to Pretrial Services, Ms. Williams has 11-year-old misdemeanor convictions for driving without a license and giving false registration to an officer, and was never taken into custody or charged with any other offense. The government similarly misstates her financial viability. As confirmed by a Pretrial Services interview, Ms. Williams reported that for the last two years, she was employed as a services coordinator with Bay Area Moisture Control in Novato, California, but the business closed down due to the pandemic. As a result, she received unemployment benefits for two months, totaling $3000 per month. Rather than simply rest and collect unemployment, she began working with a temp agency and obtained employment quickly. Now, she is on a monthlong assignment performing customer service for an eyeglass

6

BRYANT / Opp. to Gov't Motion to Revoke Release Order

manufacturer. Ms. Williams is industrious and has a long working life ahead of her; other than during the pandemic, she has been consistently employed; and she is currently employed. If Mr. Bryant were to violate the conditions of his bond, the government would be able to recover $50,000 from her over the course of her lifetime, and the loss of that money would be financially devastating for her. This fact, combined with her longstanding and close relationship with Mr. Bryant, makes her a viable cosigner.

Lastly, the government asserts that "[d]espite Pretrial Services' lack of evaluation of Defendant for residential treatment, Judge Kim ordered Defendant released into a drug treatment program." Gov't Motion at 3. This is misleading. Although Mr. Bryant had not been interviewed for treatment at New Bridge, he had a bed reserved for him at Center Point. Pretrial Services interviewed Mr. Bryant about, among other topics, his drug use history, treatment history, and mental health history. After that interview, they determined that he is a suitable candidate for treatment at Center Point. Their contract with Center Point dictates that Center Point will accept any client that Pretrial Services refers, so there would be no risk of him arriving and being sent away. A bed was available for Mr. Bryant on Friday, March 19, 2021, and it was reserved for Mr. Bryant in the event that Judge Kim ordered him released. As set forth above, Mr. Bryant's drug use is inextricably intertwined with his criminal activity, and therefore, residential drug treatment is a powerful mitigator of any potential risk.

Both Pretrial Services and Judge Kim were fully aware of the relative risks Mr. Bryant poses of nonappearance or danger to the community, but in weighing those risks with the availability of residential drug treatment and a cosigner, determined that those risks could be mitigated. This Court should do the same.

## CONCLUSION

For the reasons set forth above, Mr. Bryant respectfully requests that the Court deny the government's motion to revoke the releasee order.

Respectfully submitted,

Date: March 19, 2021

/s/
Gabriela Bischof
Assistant Federal Defender
Counsel for Defendant
ANDRE BRYANT